**Reed v. PennDOT**

*Bernard L. Coates Jr.,* for plaintiff.
*Donald J. Smith, assistant counsel,* for PennDOT.

DOWLING, *J.,* July 30, 1992—In this license suspension appeal for failure to perform a breathalyzer test, the position of the respective parties may be represented by quotations from Shakespeare's "Henry IV, Part I," with the petitioner exclaiming, "Hark, how hard he fetches breath," and a Commonwealth replying, "Oh,... That no man might draw short breath today...."[1]

Mr. Reed received a one-year suspension of his operating privileges for an alleged violation of section 1547 of the Motor Vehicle Code (75 Pa.C.S. §1547).[2]

Petitioner concedes that the department has met its burden of proving that he failed to submit and complete a chemical test. Therefore, the burden shifts to the petitioner to prove by competent evidence that he was physically unable to take the test or not capable of making a knowing or conscious refusal. *PennDOT, Bureau of*

---

1. Act II, scene 4 and Act V, scene 2.
2. "(b) *Suspension for refusal*—
"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months."

*Traffic Safety v. Cassidy,* 103 Pa. Commw. 582, 521 A.2d 59 (1987), citing *PennDOT, Bureau of Traffic Safety v. Struzzeri,* 95 Pa. Commw. 12, 504 A.2d 961 (1986).

A hearing de novo was held on February 5, 1992. The department's witnesses were Trooper Jeffrey A. Piper of the Pennsylvania State Police (arresting officer) and Corporal Glenn C. Doman of the Pennsylvania State Police (breath test operator). The motorist, Daniel Edward Reed, testified on his own behalf. A deposition of William Bradley Bush, M.D., was entered into the record as an exhibit for Reed.

At the hearing, Corporal Doman explained to Reed what would be required of him relative to completing the breathalyzer test. He testified that Reed blew into the mouthpiece for a few seconds causing the digital display on the instrument to show a reading of .080, but stopped blowing before the instrument had gathered enough air to register a valid sample. Corporal Doman requested that Reed blow into the instrument again, and again he did so for only a few seconds, wherein a reading of .121 was displayed on the screen, although enough air had not entered the machine to register a valid sample. Corporal Doman testified that, after blowing only a few seconds, Reed removed the mouthpiece from his mouth and stated, "that's all I have." Reed then became combative and argumentative. The corporal was asked on direct examination if Reed indicated to him whether he had any medical condition, and Doman indicated that Reed did not mention any. Moreover, Reed indicated that he was not currently taking any medication and that, although he had visited a doctor's office during the first week of August 1991, this was merely for a checkup, and that he had no physical defects.

Where no obvious inability is apparent, a finding that the driver was unable to take the chemical test must be

supported by competent medical evidence. See *Struzzeri, supra.* Whether a driver has satisfied this burden is a factual determination to be made by the trial court. *Waigand v. Commonwealth,* 68 Pa. Commw. 541, 449 A.2d 862 (1982). Additionally, the finding of a trial court that a licensee made a good faith attempt to complete the breathalyzer test is irrelevant to the question of whether the licensee refused the test. Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal. See *PennDOT, Bureau of Driver Licensing v. Kilrain,* 140 Pa. Commw. 484, 593 A.2d 932 (1991), *appeal denied,* 600 A.2d 541 (1991); *PennDOT, Bureau of Driver Licensing v. Beatty,* 143 Pa. Commw. 272, 598 A.2d 1069 (1991).

The department contends that the case at bar is controlled by *Larkin v. Commonwealth,* 109 Pa. Commw. 611, 531 A.2d 844 (1987). In *Larkin,* the licensee testified before the Common Pleas Court that he refused the test because he suffered from a neurological disorder and had been advised by his physician to avoid strenuous activity. He also proferred the deposition testimony of his physician who therein reiterated the recommended restrictions on strenuous activity and commented upon the decreased respiratory capacity associated with the disease in its acute stages. The licensee testified that he informed the officer of his medical problem and would have submitted to chemical testing of his blood or urine had the alternative test been offered. The police officer denied that the licensee had revealed his physical incapacity, indicated that any such incapacity was not apparent, and stated that alternative tests were available had licensee so requested. In *Larkin,* the trial court concluded that, while appellant suffered a respiratory disease, he "lacked any medical proof that his disease precluded his taking the breath test." *Larkin* at 613, 531 A.2d at 846. The court also indicated that the licensee had a duty to advise the police

of any medical problems that were not reasonably ascertainable. The Commonwealth Court upheld the lower court's imposition upon the licensee to disclose any medical condition which was not apparent stating:

"The police are not omniscient. Stating the obvious, they have no means of discerning a nonapparent disability absent a communication by the motorist." *Larkin* at 615, 531 A.2d at 847 (1987).

In the instant case, Reed did not disclose his medical condition. Furthermore, his apparent medical condition is one which is not reasonably ascertainable. Additionally, although Dr. Bush indicated in the deposition that Reed suffered from a respiratory condition and indicated that he would have difficulty performing various breathing tests, he did not indicate that his condition precluded his taking or completion of the breath test. Moreover, had Reed disclosed his medical condition to the police officers, arrangements could have been made for Reed to submit to a chemical test of his blood or urine. Since petitioner did not disclose a medical condition which was not obvious or apparent to the officers, he cannot be permitted to escape the license suspension imposed.

To conclude with the Bard, and this time from the epilogue of "The Tempest":

> "Gentle breath of yours, my sails
> Must fill, or else my project fails."

Accordingly, we enter the following

## ORDER

And now, July 30, 1992, the petition is dismissed.