588 A.2d 1017

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

**v.**

**Richard FOLEY, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 22, 1990.

Decided March 26, 1991.

568

David R. White, Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel in Charge, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Harrisburg, for appellant.

Douglas C. Roger, Jr., Media, for appellee.

Before PALLADINO and McGINLEY, JJ., and BARBIERI, Senior Judge.

PALLADINO, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT), appeals an order of the Court of Common Pleas of Delaware County (trial court), which sustained Richard Foley's (Licensee) appeal of a license suspension for refusing to submit to chemical alcohol testing. Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b). We reverse.[1]

Licensee struck a traffic light pole with his car, injuring his head, leg and ribs. He was taken to a hospital where

---

1. Judge Palladino reassigned the instant matter to herself on November 7, 1990.

police officer Daniel Wallower (officer) arrested him for driving under the influence of alcohol. At the hospital, the officer advised Licensee of the implied consent laws and requested him to submit to a blood test two times. Licensee refused on both occasions. Thereafter, DOT notified Licensee that his license was suspended for one year for refusing to submit to chemical testing.

Licensee appealed to the trial court. At a de novo hearing, DOT presented evidence that Licensee was arrested for driving while under the influence of alcohol, informed of the consent laws, requested to submit to chemical testing and refused. Licensee testified as to the extent of his injuries and presented pictures of his car after the accident. He did not present expert medical evidence. Thereafter, the trial court stated:

> [T]his court is convinced that [Licensee] had obvious injuries to his head and body and is further convinced that those injuries affected [Licensee's] ability to knowingly and intelligently refuse to take a blood alcohol test.

*Department of Transportation v. Foley* (No. 89–2596, filed March 6, 1990), slip op. at 4–5. The trial court sustained the appeal.

On appeal to this court,[2] DOT raises one issue: whether Licensee was required to produce expert medical evidence to prove that his injuries rendered him incapable of making a knowing and conscious refusal. The trial court concluded that this court's decision in *Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa.Commonwealth Ct. 49, 500 A.2d 214 (1985), relieved Licensee of a requirement to produce medical evidence in support of his claim that his injuries prevented him from making a knowing and conscious refusal.

2. Our scope of review is limited to a determination of whether findings of fact are supported by substantial evidence, errors of law have been committed or the trial court's order demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Derhammer*, 118 Pa.Commonwealth Ct. 364, 544 A.2d 1132 (1988).

In *Day,* this court held that medical evidence that a licensee's injuries rendered him incapable of making a knowing and conscious refusal is not a per se requirement. *Id.,* 93 Pa.Commonwealth Ct. at 52, 500 A.2d at 215. We have subsequently interpreted *Day* to mean that "a medical opinion to validate a [licensee's] refusal to submit to a chemical test will not be required when *severe, incapacitating* injuries are *obvious." Department of Transportation, Bureau of Driver Licensing v. Garlan,* 121 Pa.Commonwealth Ct. 400, 404, 550 A.2d 873, 875 (1988), *petition for allowance of appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989) (emphasis in original), quoting *Department of Transportation, Bureau of Driver Licensing v. Cochrane,* 114 Pa.Commonwealth Ct. 185, 190, 538 A.2d 614, 616, *petition for allowance of appeal granted,* 521 Pa. 607, 555 A.2d 117 (1988).

In *Day,* the trial court found that the licensee sustained "multiple injuries, including: a broken jaw, severe facial lacerations, a broken arm, an injured leg, and blows to the back of head. The result of these injuries was rambling speech, confusion, and at times a total loss of memory." *Day,* 93 Pa.Commonwealth Ct. at 52, 500 A.2d at 215. This court concluded that these injuries were obviously severe and incapacitating.

In *Cochrane,* the licensee asserted that as a result of a head-on automobile collision, he sustained a concussion, a corneal abrasion, bruises, and loss of memory. This court concluded that these injuries were not of an obviously severe and incapacitating nature.

In the present case, the trial court recited that Licensee sustained the following injuries: "a loss of consciousness as a result of the accident,[3] chest injuries, and a head injury. The impact of [Licensee's] head with the windshield of his vehicle was forceful enough to shatter the windshield. [Licensee] was cut, bleeding, and had a bump on his head." *Foley,* at 4. Licensee also testified that he remembered

3. This finding is based solely on Licensee's testimony that, immediately after the impact of the accident, he believed he lost consciousness for 30 seconds to a minute. Transcript of testimony, at 19.

being asked to submit to the test,[4] that the hospital discharged him after only a 40 minute examination,[5] and that he received no further treatment for his injuries.[6]

While we are mindful that injuries to the head can be severe, every head injury is not obviously severe and incapacitating. Considering Licensee's testimony that he remembers the requests made by the officer, that his examination at the hospital was brief and that he received no subsequent medical treatment, we conclude that Licensee's injuries were not obviously severe and incapacitating. Consequently, his injuries do not fall within the narrow purview of *Day*, and he was required to produce expert medical evidence as to his alleged inability to make a knowing and conscious refusal. Licensee failed to provide any medical evidence.

Accordingly, we reverse the trial court's order and reinstate the suspension.

## ORDER

AND NOW, March 26, 1991, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed and the suspension is reinstated.

McGINLEY, J., files a dissenting opinion.

McGINLEY, Judge, dissenting.

I respectfully dissent.

After reviewing Licensee's injuries, the majority concludes that the injuries suffered by Licensee were not as severe or incapacitating as those suffered by the motorist in *Day* and therefore could not have been so obvious as to relieve him of the additional burden of producing medical testimony to establish he was unable to make a knowing and conscious refusal. Majority Opinion at 1019. In *Day*, this court noted that the cases requiring medical evidence do not indicate that such evidence is a *per se* requirement

4. Transcript of testimony, at 24.
5. Transcript of testimony, at 23.
6. Transcript of testimony, at 23.

and, taking into account the injuries suffered and all the attendant circumstances, it is for the trial judge to determine the credibility of the witness and make a finding as to whether the refusal was knowing and conscious. This court went on to recite that "a motorist's bare assertion of physical incapacity, absent any supportive medical evidence, is insufficient to meet the required burden of proof." *Day*, 93 Pa.Commonwealth Ct. at 52, 500 A.2d at 215. In *Day* we concluded that a motorist's physical condition is to be determined on a case by case basis.

On appeal we must not exceed our scope of review by invading the province of the fact finder. Our Supreme Court recently discussed the appellate courts' proper scope of review in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In *O'Connell*, the Court notes:

> When appellate courts review the decision of a court of common pleas in a license suspension case, the scope of review is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision.
>
> Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts.
>
> As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility. This rule of law is well established in our jurisprudence and is rooted in concepts of fairness, common sense and judicial economy.

*Id.*, 521 Pa. at 248, 555 A.2d at 875 (citations omitted).

Here, the trial court determined that Licensee sustained obvious incapacitating injuries noting that the impact of

Licensee's head with the windshield of the vehicle was forceful enough to shatter the windshield and that the vehicle had sustained extensive front-end damage including a broken steering wheel. The trial court also found that Licensee was rendered unconscious, had a bump on his head and was cut and bruised. The trial court observed that the testimony of the police officer was inconsistent with regard to Appellee's head injury[1] and noted that the officer was unable to recall if the windshield of the vehicle was shattered.

We are aware that this court has required competent medical evidence in similar factual situations to establish the operator's inability to make a knowing and conscious refusal. However, to require *medical* evidence where the trial court finds an obvious and severe, incapacitating injury is to exceed our standard of review. Certainly Licensee was competent to testify concerning his condition at the time of the refusal. It is within the exclusive province of the trial court to judge the weight and credibility of Licensee's testimony.

Accordingly, I would affirm on the basis that the trial court's conclusion that, as a result of obvious incapacitating injuries, Licensee was unable to knowingly and consciously refuse chemical testing, is both correct as a matter of law and supported by substantial evidence.

---

1. During direct examination of the police officer the following exchange took place:

Q. Did he have any injuries?
A. He had some injuries, yes, ma'am.
Q. What else did you observe—what were his injuries?
A. He had bruises on his legs. I believe he struck his head also....

On cross-examination:

Q. ... You indicated that Mr. Foley did not suffer from any head—head injuries based on your observation. Is that correct?
A. That's correct, sir.

Reproduced Record at 11a, 17a–18a.